IN THE

# ARIZONA COURT OF APPEALS

DIVISION TWO

_____

THE STATE OF ARIZONA,
*Appellee*,

*v.*

ANDRES SANCHEZ,
*Appellant*.

No. 2 CA-CR 2022-0056
Filed September 29, 2023

_____

Appeal from the Superior Court in Pima County
No. CR20200723001
The Honorable Javier Chon-Lopez, Judge

**AFFIRMED**

_____

COUNSEL

Kristin K. Mayes, Arizona Attorney General
Alice M. Jones, Deputy Solicitor General/Section Chief of Criminal Appeals
By Karen Moody, Assistant Attorney General, Tucson
*Counsel for Appellee*

Megan Page, Pima County Public Defender
By Ian M. McCloskey, Assistant Public Defender, Tucson
*Counsel for Appellant*

## OPINION

Presiding Judge Brearcliffe authored the opinion of the Court, in which Judge Kelly concurred and Judge Eckerstrom concurred in part and dissented in part.

B R E A R C L I F F E, Presiding Judge:

¶1        Appellant Andres Sanchez appeals his conviction and sentence for aggravated domestic violence.  Sanchez asserts the trial court erred in admitting certain video evidence and denying his motion for new trial.  For the following reasons, we affirm.

### Factual and Procedural Background

¶2        "We view the facts in the light most favorable to upholding the conviction." *State v. Griffin*, 250 Ariz. 651, ¶ 2 (App. 2021).  Sanchez and D.L. lived together in early 2020 in Tucson.  In February 2020, D.L. and Sanchez argued at their apartment and, eventually, D.L. left on foot to pick up her children from school.  As D.L. was walking to the school, Sanchez "came up behind" her, startling her.  D.L.'s phone started ringing, and Sanchez "snatched the phone from [her] hand and he threw it [o]n the ground," breaking it.  Sanchez then began pushing D.L., pulling her hair, and then hit her on the back of the head.  Sanchez told D.L. if she "call[ed] the cops on him that he would kill [her]."  Eventually, D.L. was able to escape and run to the school.

¶3        A driver who saw the fight called 9-1-1.  A police officer went to the school looking for D.L.  He found her in the school office "crying" and "frightened" and took her statement.  Sanchez was arrested and charged with aggravated domestic violence "by disturbing [D.L.'s] peace."

¶4        At trial, the state notified the trial court of its intention to present body camera footage from the officer taken while interviewing D.L. at the school.  The state explained the video showed "her demeanor, how upset [D.L.] was."  In the video, D.L. told the officer what had happened, "why she's scared of [Sanchez], why she's upset," and the video ends with the officer telling her "she doesn't have to go back home."  Sanchez objected to the video, asserting that the officer had arrived "some time later" and that D.L.'s demeanor when he arrived was not an accurate representation

of the effect Sanchez's actions had on her. He argued there was nothing in the video that could not be explained to the jury through testimony and claimed the video was "more prejudicial than it [was] probative."

¶5        After confirming with the state that the video had been taken within thirty minutes of the incident and that Sanchez intended to attack D.L.'s credibility as to her emotional state, the trial court ruled it was admissible and its probative value was not outweighed by the danger of unfair prejudice. The court explained that, if Sanchez questioned D.L.'s credibility as to whether she had been disturbed, the video would be relevant to respond to such an argument. The video was ultimately shown to the jury over Sanchez's renewed objection.

¶6        During deliberations, the jurors asked the trial court why the cause number on one exhibit did not match the cause number before them. The court consulted with the parties and, at Sanchez's request, drafted an answer for the jurors explaining that it was "an error." Meanwhile, the bailiff entered the courtroom, stating, "It looks like they have a verdict." The court told the bailiff, "Well, take that back," presumably referring to the drafted answer to the jury question. After a recess, the jurors were brought in and returned a guilty verdict. On the record before us, Sanchez did not object or question whether the answer had been given to the jurors.

¶7        After the guilty verdict, Sanchez filed a timely motion for new trial pursuant to Rule 24.1, Ariz. R. Crim. P., arguing the jury had returned its verdict before receiving the trial court's answer to the jury question. The court denied the motion and later Sanchez was sentenced to the presumptive term of 2.25 years in prison. We have jurisdiction over Sanchez's appeal from the conviction and sentence.

## Jurisdiction over the Denial of the Motion for New Trial

¶8        As an initial matter, Sanchez devotes much of his briefing to challenging the trial court's denial of his motion for new trial. Sanchez's notice of appeal, however, did not identify the order denying that motion. Although the state did not raise the issue, we have a continuing duty to examine our own jurisdiction. *Musa v. Adrian*, 130 Ariz. 311, 312 (1981). While we have previously concluded that we lack jurisdiction under these circumstances, *State v. Wilson*, 253 Ariz. 191, n.3 (App. 2022), we requested supplemental briefing on the issue.

¶9        The parties agree that neither a separate notice of appeal—nor a specification of the denied motion for new trial in the notice of appeal of

the judgment and sentence—is required to perfect an appeal of a denied motion for new trial. Contrary to the parties' and our dissenting colleague's compelling arguments, we conclude we do not have jurisdiction over the denial of the motion for new trial.

¶10        The jurisdiction of this court "is prescribed by statute and we have no authority to entertain an appeal over which we do not have jurisdiction." *State v. Nunn*, 250 Ariz. 366, ¶ 4 (App. 2020) (quoting *State v. Limon*, 229 Ariz. 22, ¶ 3 (App. 2011)). Because we are "a court of limited jurisdiction," we have "only [the] jurisdiction specifically given to [us] by statute." *Campbell v. Arnold*, 121 Ariz. 370, 371 (1979); *see also* A.R.S. § 13--4031 (defendant "may appeal as prescribed by law and in the manner provided by the rules of criminal procedure"). "A notice of appeal from a judgment or order other than [a judgment of conviction and imposition of sentence] must be filed no later than 20 days after entry of" that order. Ariz. R. Crim. P. 31.2(a)(2)(B). And such a notice "must identify the order, judgment, or sentence that is being appealed." Ariz. R. Crim. P. 31.2(c)(1).

¶11        Sanchez's notice of appeal did not identify the order denying his motion for new trial and was filed more than twenty days after that ruling. Although the trial court granted Sanchez's request for a delayed appeal, neither his petition pursuant to Rule 32, Ariz. R. Crim. P., nor the court's order mentioned the denial. Sanchez argues, however, that his having identified the transcript of the hearing on the motion as part of the record on appeal was sufficient to raise a challenge to the denial of that motion, thereby bringing the matter into the exception set forth in *Hanen v. Willis*—a technical error. 102 Ariz. 6, 8-9 (1967). We agree, as does the state, that "technical errors in a notice of appeal" are "nonjurisdictional defects that will not render it ineffective absent a showing of prejudice" to the appellee. *State v. Smith*, 171 Ariz. 501, 503 (App. 1992).

¶12        We cannot agree, however, that a request for a transcript of the hearing is sufficient to satisfy the requirements of Rule 31.2. Rule 31.2 requires that the notice itself identify the subject of the appeal, and the notice before us does not indicate that Sanchez specifically intended to appeal from the denial of his motion for new trial. *Contra Smith*, 171 Ariz. at 503-04 (technical error when notice listed "sentence" but included date of acceptance of plea and sentence). We cannot disregard the plain requirements of the rules and cannot infer from the notice something that is not actually stated or reasonably implied. *See Baker v. Emmerson*, 153 Ariz. 4, 8 (App. 1986) (original notice of appeal from earlier judgment that failed to dispose of claim against party insufficient to appeal from amended judgment adding the party). Furthermore, designating a transcript in the

record on appeal occurs separately from the notice of appeal and serves a significantly different purpose. Counsel may designate transcripts of a wide variety of non-presumptive proceedings for various reasons, many of which would have nothing to do with an appeal of a separate order. Moreover, the designation of record here could not effectively serve the function of a notice of appeal because, as such, it would have been untimely.

¶13        Beyond the questions of adequate notice and timeliness, both Sanchez and the state contend that we have jurisdiction because the trial court's order denying Sanchez's motion for new trial was interlocutory and not final or appealable until the entry of his conviction and sentence. This is incorrect.

¶14        Section 13-4033(A), A.R.S., gives this court jurisdiction in a criminal matter over an appeal "by the defendant only from" a "final judgment of conviction or verdict of guilty except insane," a "sentence on the grounds that it is illegal or excessive," and certain other orders, including one "denying a motion for a new trial." As noted above, Rule 31.2(a)(2)(B) requires a defendant to file a notice of appeal from an order other than a judgment of conviction or sentence within twenty days of that order. And Rule 31.2(h) specifically requires an amended notice of appeal if a trial court "enters an order granting or denying relief under Rule 24" — including relief sought under Rule 24.1 covering motions for new trial — after a notice of appeal has been filed. Rule 31.2(h) makes no distinction between or among the Rule 24 motions to which it relates. Thus, the statute and rule anticipate a ruling on a motion for new trial being treated as a separate, appealable order, which, correspondingly, must be separately appealed.[1] *See State v. Wynn*, 114 Ariz. 561, 562-63 (App. 1977) (no jurisdiction over Rule 24.2 ruling when not separately appealed).

¶15        We also cannot conclude, as the parties urge, that a ruling on a motion for new trial is interlocutory and effectively merged with the conviction and sentence, thereby allowing appellate review by virtue of a notice of appeal of the judgment and sentence alone. For much of Arizona's history, a ruling on such a motion was subject to review on appeal from a judgment. Former A.R.S. § 13-4035 directed that on "appeal from a final

---

[1]Our dissenting colleague points out that § 13-4033(A) states the defendant "may" appeal such a denial and not "must." But of course, it also states that he "may" appeal the judgment and sentence, and we similarly would not infer that a notice of appeal failing to identify the judgment and sentence intended to appeal them.

judgment of conviction," an appellate court was to "review *all rulings* affecting the judgment." *State v. Dawson*, 164 Ariz. 278, 286 (1990) (Cameron, J., dissenting) (emphasis added) (quoting former § 13-4035(A)). The former statute also expressly provided: "If a motion for a new trial was made and denied, the court shall, on appeal from the judgment, review the action of the court below in denying a new trial." *Id.* (quoting former § 13--4035(A)). The legislature repealed this statute applying to criminal cases in 1995. 1995 Ariz. Sess. Laws, ch. 198, § 1. It did not, however, repeal a similar provision applying to civil cases. *See* A.R.S. § 12-2102.

**¶16** Both § 12-2102 and former § 13-4035 arose from a line of Arizona Supreme Court cases in which the court determined that, under previously existing civil statutes, "an order overruling a motion for a new trial was not an intermediate order" and that, therefore, a ruling thereon could not be considered part of an appeal from the judgment. *Hays v. Richardson*, 95 Ariz. 263, 265-67 (1964) (citing *Miami Copper Co. v. Strohl*, 14 Ariz. 410 (1913), *superseded by statute as stated in Hays*, 95 Ariz. at 265-67)); *see also Torrez v. State*, 21 Ariz. 65, 66 (1919) (no jurisdiction when appeal taken from "verdict of conviction" but not "judgment" or denial of motion for new trial). Our supreme court inferred that the legislature's amendment of the civil statutes had been intended to resolve the jurisdictional problem it had identified in earlier decisions. *Hays*, 95 Ariz. at 265.[2]

**¶17** Despite the substantial parity between our civil and criminal standards for motions for a new trial, *see State v. Fischer*, 242 Ariz. 44, ¶ 11 (2017), our legislature's retaining the civil provisions extending our review to civil motions for new trial but repealing the criminal statute, shows that our review is limited in the criminal context.[3] *See Curtis v. Morris*, 184 Ariz.

---

[2]The 1995 legislative amendment also post-dated *Smith*, 171 Ariz. 501, a case from 1992 on which our dissenting colleague principally relies.

[3]As the state points out, it appears the legislature repealed former § 13-4035 in response to our supreme court's reliance on it in support of its conclusion that review pursuant to *Anders v. California*, 386 U.S. 738 (1967), was required in post-conviction proceedings. *See Montgomery v. Sheldon*, 181 Ariz. 256, *supp. op.* 182 Ariz. 118, 119-20 (1995). Although the legislative history supports that this was the motivation for the repeal, the legislature could have repealed only subsection (B) and the first sentence of subsection (A), which formed the basis for the *Montgomery* court's conclusion that the appellate court was required to "review the entire record." A.R.S. § 13-4035 (1994); *Montgomery*, 181 Ariz. 256, 262 n.3 (Martone, J., dissenting). Instead, it repealed not only that subsection but the portion of subsection (A) that

393, 397 (App. 1995) (change to one section and not to another indicative of intent in determining implicit repeal); *cf. State v. Ault*, 157 Ariz. 516, 519 (1988) ("[W]hen the legislature expresses a list, we assume the exclusion of items not listed."). In view of our legislature's statutory choices, we have no authority to exceed our jurisdictional bounds. *Nunn*, 250 Ariz. 366, ¶ 4.

¶18 Furthermore, we cannot agree with the parties' assertions that following the statute as amended will necessarily create practical difficulties for parties and the courts, such as barring review of issues directly related to conviction and sentencing and piecemeal litigation. As we have historically done, when an issue is raised that goes to the validity of a conviction or sentence, we will consider an argument on that issue in the context of an appeal from the judgment or sentence. *See, e.g.*, *Wilson*, 253 Ariz. 191, n.3; *see also* Ariz. R. Crim. P. 31.2(a)(2)(A). Such a review will encompass most claims raisable in a motion for new trial under Rule 24.1—a verdict that is "contrary to law or the weight of the evidence," misconduct by the state, a trial court's legal or instructional error, other claims of an unfair trial, and many claims of juror misconduct.

¶19 Thus, although a separate, timely notice of appeal is necessary to obtain review of the denial of a motion for new trial as such, in view of these available grounds, the failure to file a separate notice will not often preclude us from addressing the underlying legal issues. But, because some claims relate directly and solely to the denial of the motion itself, a separate notice of appeal will be necessary to initiate review of those claims. The primary example is a claim of juror misconduct as to which a defendant requests that the trial court take evidence pursuant to Rule 24.1(d). If the court denies that request, a challenge to that order would not "necessarily require a review of the judgment itself." *Wendling v. Sw. Sav. & Loan Ass'n*, 143 Ariz. 599, 601-02 (App. 1984). In order to obtain review of such an order, a defendant would need to file a notice of appeal from the denial within twenty days, as required by Rule 31.2(a)(2)(B), because we could not address such a claim outside the context of the denial of the motion for new trial.

---

specifically addressed the scope of an appeal in regard to the denial of a motion for new trial. In any event, the plain language of the statute remains as the legislature passed it—without a provision bringing the denial of a motion for new trial within the scope of review on an appeal from the judgment. *See In re McLauchlan*, 252 Ariz. 324, ¶ 15 (2022) ("Legislative history is not a substitute for clear legislative language . . . .").

¶20  Despite the parties' concerns about piecemeal litigation, this case exemplifies the wisdom of such an approach. The motion for new trial in this case was denied in September 2021. As Sanchez pointed out at oral argument before this court, the "probative value" of an evidentiary hearing examining whether the jurors had received the trial court's corrective instruction would be low after so much time has passed. Appellate review of the denial here within the statutory time frame and rules, however, would have ensured meaningful appellate review.

¶21  In the absence of a timely notice of appeal identifying the trial court's order denying a motion for new trial, this court has no jurisdiction to review the denial. Even so, this court will continue to consider *issues* that may have been raised in an unappealed motion for new trial when they are raised as a challenge to the validity of the conviction or sentence.

¶22  Here, Sanchez's legal argument—that the trial court erred in responding to the jury's question—could have been raised as a challenge to both the denial of his motion for new trial and his conviction. But on appeal he has not made a separate argument raising the claim in the context of his conviction. Instead, he asks us to review the court's actions entirely in the context of the unappealed denial of his motion for new trial, and he has therefore waived the claim in regard to the validity of his conviction. *See State v. Moreno-Medrano*, 218 Ariz. 349, ¶ 17 (App. 2008) (argument waived when not argued on appeal), *overruled on other grounds by State v. Vargas*, 249 Ariz. 186, ¶ 1 (2020).[4]

¶23  Our dissenting colleague is no doubt correct that there may be further and other procedural issues resulting from this opinion presented in succeeding cases, but our role is not to ignore otherwise proper legislative acts because we do not like the consequences. Because the order denying Sanchez's motion for new trial was not properly or timely appealed, we lack jurisdiction to consider it. *See Wilson*, 253 Ariz. 191, n.3; *see also* § 13-4033(A)(1), (2); Ariz. R. Crim. P. 31.2(c)(1). And because he has waived any argument in regard to his appeal from his conviction, we

---

[4]Sanchez is not left without a remedy. Unlike a civil litigant, whose opportunity to appeal is lost if he fails to comply with the appellate rules, a criminal defendant can seek a delayed appeal. As Sanchez correctly points out, Rule 32.1(f) provides that a defendant may seek post-conviction relief if "the failure to timely file a notice of appeal was not the defendant's fault." And failure to file a notice of appeal may constitute ineffective assistance of counsel. *Garza v. Idaho*, 586 U.S. ___, 139 S. Ct. 738, 747 (2019).

decline to address his arguments in that context. We have jurisdiction over the remaining issues on appeal pursuant to A.R.S. §§ 12-120.21(A)(1), 13--4031, and 13-4033(A)(1).

## Admission of Body Camera Video

**¶24** On appeal, Sanchez argues Officer Martinez's body camera video of D.L.'s statements should have been precluded. First, he contends that because the video was taken thirty minutes after the underlying assault, it was too remote in time to be probative of D.L.'s state of mind. And second, he asserts that, because the video "invite[d] the jury to make its decision based on emotion," it had a danger of being unfairly prejudicial under Rule 403, Ariz. R. Evid. We review a trial court's admission of evidence for an abuse of discretion. *State v. Leteve*, 237 Ariz. 516, ¶ 18 (2015).

### I. Remoteness

**¶25** Evidence that "has any tendency to make a fact more or less probable" and is "of consequence in determining the action" is relevant and admissible, unless otherwise excluded. Ariz. R. Evid. 401, 402. The state argues that the body camera video was relevant because it showed that Sanchez's behavior had in fact disturbed D.L.'s peace and had been "seriously disruptive behavior" constituting domestic violence.

**¶26** The trial court determined that the video was "probative to show how [D.L.] was feeling." The court also determined that, if Sanchez were to challenge D.L.'s credibility on her emotional state, the video would be relevant for that independent reason. *See State v. McCall*, 139 Ariz. 147, 158-59 (1983) ("[A]ny evidence that substantiates the credibility of a prosecution witness on the question of guilt is material and relevant and may be properly admitted."). D.L.'s emotional state following Sanchez's attack was probative of whether her peace was disturbed by the attack, an element of the charged offense. And evidence of her emotional state captured by the video was relevant. *See* A.R.S. §§ 13-3601(A), 13-2904(A)(1).

**¶27** Sanchez argues nonetheless that the video was "too remote"—having been recorded thirty minutes after the underlying assault—to be probative. He does not, however, offer any authority holding that the thirty-minute delay in capturing D.L.'s mental state was too long as a matter of law. Although a victim's emotional state can change with the passage of time, *cf. State v. Rivera*, 139 Ariz. 409, 411 (1984) (discussing time factor in excited utterance determination, stating that "the length of time such stress will last varies among individuals"), remoteness

generally goes to the weight rather than the admissibility of evidence, *cf. State v. Williams*, 209 Ariz. 228, ¶ 17 (App. 2004) (discussing remoteness of other-act evidence admitted under Rule 404(b), Ariz. R. Evid.). Both Sanchez and the state were free to argue any inference to be drawn from D.L.'s conduct, as well as any effect from the passage of time on her emotional state.

**¶28** Indeed, Sanchez argues that D.L.'s conduct during the assault belies the state's claim of her disturbed emotional state. During the assault, a witness drove by and saw Sanchez hit D.L. on the head and then saw D.L. "charge at him" in response to being hit. Sanchez argues that such a reaction means D.L. could not possibly have been disturbed during the incident. Therefore, he asserts, the video only captures her state of mind *after* the incident, which was irrelevant. Nonetheless, the weight and value to be given the witness's testimony is for the jury. *State v. Cox*, 217 Ariz. 353, ¶ 27 (2007). We will not reweigh the evidence on appeal. *State v. Rodriguez*, 205 Ariz. 392, ¶ 18 (App. 2003). We cannot say, therefore, that the trial court abused its discretion in admitting this evidence under Rules 401 and 402.

## II. Improper Emotional Influence

**¶29** Sanchez also argues that, even if relevant, the evidence should nonetheless have been excluded as unfairly prejudicial under Rule 403, Ariz. R. Evid. He claims that the emotional nature of the video caused the jury to reach a verdict on an improper basis, thereby prejudicing him.

**¶30** Rule 403 bars even relevant evidence from being admitted if "its probative value is substantially outweighed by a danger of . . . unfair prejudice." "Unfair prejudice results if the evidence has an undue tendency to suggest decision on an improper basis, such as emotion, sympathy, or horror." *State v. Ortiz*, 238 Ariz. 329, ¶ 9 (App. 2015) (quoting *State v. Mott*, 187 Ariz. 536, 545 (1997)). As a general matter, we do not second-guess a trial court's determination of unfair prejudice; that court is in the best position to judge the impact of questioned evidence in light of the entire trial and is therefore afforded broad discretion in applying Rule 403. *State v. Gomez*, 250 Ariz. 518, ¶ 15 (2021); *State v. Togar*, 248 Ariz. 567, ¶ 23 (App. 2020).

**¶31** The video certainly captures D.L. in an emotional state, but that does not necessarily mean the resulting verdict was improperly based on, or risked being improperly based on, sympathy or any other emotion. Rather, D.L.'s demeanor was itself the relevant and probative aspect of the

video. Therefore, her level of emotion was a proper, rather than improper, factor for the jury to consider in its deliberations. It cannot be assumed, without more, that the state improperly influences the jury towards sympathy whenever it provides direct evidence that the victim's peace was disturbed—an element the state had the burden to prove. Moreover, the jurors were instructed to *not* be influenced by "sympathy or prejudice," and we assume they followed their instructions. *State v. Gallardo*, 225 Ariz. 560, ¶ 40 (2010). No indication of improper emotional influence appears in the record. Therefore, the trial court did not abuse its discretion in rejecting Sanchez's Rule 403 objection.[5]

**Disposition**

**¶32**        We affirm Sanchez's conviction and sentence.

E C K E R S T R O M, Judge, concurring in part and dissenting in part:

**¶33**        There is a reason our legislature has set forth a separate pathway, in addition to the customary appeal of the final judgment of conviction, for noticing an appeal of a denied motion for new trial. Although rare in practice given the timing requirements for litigating such a motion, motions for new trial can hypothetically be litigated post-judgment. *See* Ariz. R. Crim. P. 24.1(b) (motion for new trial must be filed within ten days of verdict), 26.2, 26.3(a)(1)(B) (allowing court to pronounce judgment and sentence before deadline for filing motion for new trial if defendant waives both right to presentence report and right to be sentenced no sooner than fifteen days after conviction). When that occurs, the traditional appeal of the earlier judgment pursuant to A.R.S. § 13-4033(A)(1) would not logically endow this court with jurisdiction over a subsequently litigated and denied motion for new trial. To address this uncommon scenario, our jurisdictional statute preserves at § 13-4033(A)(2) a separate avenue for such an appeal.[6]

---

[5] Sanchez also appears to argue that the trial court abused its discretion because "there is no evidence the trial court viewed the video before weighing the probative and prejudicial aspects." Regardless of whether the court watched the video, the state sufficiently described the video to allow the court to rule on its admissibility.

[6] Post-judgment motions for new trial were more common when the precursor to our jurisdictional statute was originally enacted. Before Arizona's omnibus overhaul of our rules of criminal procedure in 1973, a

**¶34**        The majority overlooks that, apart from that rare exception, motions for new trial are, by procedural necessity, litigated and resolved before judgment.  When denied, the resulting order is interlocutory and non-final, and it is interwoven with, and indispensable to, the ultimate judgment of conviction.   Under that circumstance, an appeal of the judgment of conviction pursuant to § 13-4033(A)(1) would logically encompass a challenge to a denied motion for new trial.

**¶35**        In contradiction of our prior practice and the thrust of our prior jurisprudence, the majority nonetheless concludes that a notice of appeal from a "judgment of guilt and sentence" is insufficient to trigger our jurisdiction over a pre-judgment order denying a motion for new trial.  To preserve any appellate challenge to such a denial, the majority would now require criminal defendants to separately appeal that non-final order within twenty days of the trial court's denial.  Because the underlying motion for new trial must be filed within ten days of the jury's verdict, *see* Ariz. R. Crim. P. 24.1(b), that twenty-day deadline to appeal will frequently arrive before the sentencing date—before any comprehensive appeal of the defendant's conviction would be ripe.  *See* Ariz. R. Crim. P. 26.3 (allowing sentencing to occur as much as thirty days after determination of guilt and authorizing extensions beyond thirty days for "good cause" or to facilitate a presentencing hearing[7]); Ariz. R. Crim. P. 26.10 (contemplating that

---

defendant could move for a new trial either to challenge pre-judgment trial rulings or raise post-judgment claims of newly discovered evidence.  *See* former Rule 308, Ariz. R. Crim. P. (1956) (requiring defendant to move for new trial within three days of verdict unless raising claim of newly discovered evidence, which could be raised up to one year after verdict "or at a later time if the court for good cause permits").  Since 1973, newly discovered evidence claims must instead be raised in the context of post-conviction proceedings under Rule 32.

[7]Our rules require trial courts to order the preparation of presentence reports in most criminal cases and to disclose such reports to the parties at least two days before sentencing hearings.  *See* Ariz. R. Crim. P. 26.4(a), 26.6(b).  Because the preparation of a useful presentence report requires substantial research by the assigned probation officer and includes an interview with the defendant, our trial courts set sentencing dates mindful that they must provide probation officers sufficient time to prepare comprehensive reports.

formal judgment be pronounced at time of sentencing); Ariz. R. Crim. P. 26.11(a) (same).

¶36        Let us consider the consequences of that holding.  It will require a criminal defendant, who seeks to challenge a pre-judgment denial of a motion for new trial, to initiate a piecemeal appeal while in the midst of a crucial moment in the trial court litigation.[8]  This will usually occur before appellate counsel has been appointed and before the defendant can know whether appealing is strategically wise.[9]  Worse, when the deadline for filing that notice of appeal occurs during the pendency of the unfinished trial court litigation, that filing would deprive the trial court of jurisdiction. *See, e.g.*, *State v. Noriega*, 5 Ariz. App. 572, 573 (1967) ("The filing of the notice of appeal divested the trial court of jurisdiction to act except in furtherance of the appeal.").  Under that circumstance, the trial court could pronounce neither a final judgment nor a sentence absent further action from this court. *See* Ariz. R. Crim. P. 31.3(b) (setting forth several additional procedural steps required of court of appeals, appellate and superior court clerks, and appellant to suspend our jurisdiction when appeal from denial of motion for new trial has been separately noticed).  Although the majority trivializes these additional procedural burdens, our supreme court both promulgates and construes its rules to avoid such unnecessary wastes of precious court resources and costly attorney time. *See* Ariz. R. Crim. P. 1.2 (purpose and construction).

¶37        I can find no language in our controlling jurisdictional statute, § 13-4033, or in our pertinent procedural rules, that would compel defendants to choose such a counterintuitive, cumbersome, and inefficient path to invoke our jurisdiction.  As shall be explained below, we should read § 13-4033(A) as neither more nor less than its text provides:  as a menu of potential pathways, sometimes overlapping, for invoking our court's

---

[8]The counter-intuitive necessity of filing a pre-judgment notice of appeal during ongoing trial court litigation creates a procedural trap whereby counsel may inadvertently forfeit any appellate challenge to a denied motion for new trial.

[9] When defendants receive a lenient sentence or a sentence of probation, they may strategically choose to accept that outcome rather than appealing the judgment or seeking a new trial that could ultimately generate a worse result. *See State v. Smith*, 171 Ariz. 501, 505 (App. 1992) (acknowledging defendants receiving favorable outcomes might not wish to pursue challenges to judgments).

appellate jurisdiction. Our pertinent procedural rules merely acknowledge the variety of those pathways as they facilitate and coordinate appellate procedure consistent with them.

¶38 Quite simply, § 13-4033(A) authorizes criminal defendants to take appeals from the final judgment of conviction, the sentence imposed, or both. *See* § 13-4033(A)(1), (4).[10] When, as here, a defendant timely notices an appeal of the "judgment of guilt and sentence," that notice logically endows this court with jurisdiction to address all pre-judgment rulings or orders necessarily affecting the judgment of conviction and resulting sentence. *See, e.g.*, *United States v. Roe*, 913 F.3d 1285, 1293 (10th Cir. 2019) (notice of appeal that names final judgment is sufficient to support review of all earlier orders that merge into final judgment under general rule that appeal from final judgment supports review of all earlier interlocutory orders); *cf. Musa v. Adrian*, 130 Ariz. 311, 312 (1981) ("In Arizona, with certain exceptions, jurisdiction of appeals is limited to final judgments which dispose of all claims and all parties."). For this reason, we have jurisdiction to address numerous claims — indeed, as the majority concedes, *all* trial claims — when a defendant has filed such a notice.

¶39 No language in § 13-4033 suggests that the appellate claim here — challenging a denied pre-judgment motion for new trial — should be exempted from that principle. Nor would there be any logical reason to exempt such an order: when a defendant files such a motion, its denial is a necessary pre-condition of a judgment of conviction and any resulting sentence. This is because granting the motion would vacate the verdict.

---

[10]As Sanchez did here, criminal defendants routinely articulate both grounds in their notices of appeal. They do so to invoke the court's jurisdiction over *all* potential pre-judgement, judgment-related, and sentencing-related claims. They do so as a procedural precaution because the deadline for filing a notice of appeal usually occurs before any appellate counsel has even been appointed and certainly before the record has been assembled or trial transcripts generated. As a practical matter, then, defendants must file their notices of appeal before they possess the materials necessary to determine what specific claims, if any, would be appropriate to raise in their opening briefs. *See* Ariz. R. Crim. P. 31.13(a)(1) (appellant's opening briefs not due until forty days after appellate clerk distributes notice under Ariz. R. Crim. P. 31.9(e) that record is complete); Ariz. R. Crim. P. 31.10(a)(5)-(7) (requiring opening briefs to support statements of case and facts, as well as arguments presented on appeal, with appropriate citations to record).

Conversely, if pre-judgment orders denying a new trial are not included among those challengeable in an appeal of the final judgment, this court would be illogically prevented from considering a non-final order, crucial to the ultimate judgment of conviction, when a defendant has properly noticed and appealed the final judgment.

¶40        Thus, when Sanchez filed a notice of appeal from the "judgment of guilt and sentence," he invoked the subject matter jurisdiction of our court, under logical and long-settled principles of appellate review, to consider his specific claim that the trial court had erred in denying his motion for new trial. And, because an order denying such a motion for new trial is intertwined with the validity of the final judgment, an appeal of the final judgment placed the state on sufficient notice that a challenge to that order might be a potential ground for appeal.[11] The state agrees that it received sufficient notice of that claim here.

¶41        The majority nonetheless holds that, because § 13-4033(A)(2) separately itemizes "an order denying a motion for a new trial" among the grounds to invoke our jurisdiction, a defendant *must* separately appeal that order to obtain review. But the pertinent language of the statute sets forth no such requirement. It merely itemizes the orders from which an appeal "may be taken."

¶42        Nor does any other language in § 13-4033 suggest that the several pathways to trigger our jurisdiction are mutually exclusive. No language suggests that appellants must specify all potential grounds for jurisdiction itemized in § 13-4033 so long as they specify one that encompasses the underlying claims they might bring.

---

[11]Indeed, the contents of Sanchez's notice of appeal suggested that he might challenge the denial of his motion for new trial. Within his notice, he expressly sought a transcript of the hearing on that motion. Even assuming our rules impose a duty to separately notice such an appeal, the majority's refusal to accept that document as sufficient notice contradicts our prior jurisprudence, which has repeatedly forgiven technical, non-prejudicial errors, in notices of appeal. *See, e.g.*, *State v. Rasch*, 188 Ariz. 309, 311 (App. 1996) (incorrect cause number not jurisdictional); *Smith*, 171 Ariz. at 503-04 (notice of appeal from "sentence" sufficient to trigger jurisdiction to review underlying conviction); *State v. Good,* 9 Ariz. App. 388, 392 (1969) ("mere technical errors in a notice of appeal" do not render notice ineffective, so long as appellee has not been prejudiced).

**¶43**        As a practical matter, the grounds itemized to invoke our jurisdiction frequently overlap.  As explained above, and most pertinent here, the validity of a "final judgment of conviction" pursuant to § 13-4033(A)(1) necessarily depends on a denial of any pre-judgment motion for a new trial, something that can be a separate ground for appeal under § 13-4033(A)(2).  The lawfulness and length of a "sentence" appealable pursuant to § 13-4033(A)(4) frequently depend on the lawfulness and nature of the "judgment of conviction."  And, as the majority acknowledges, many legal bases for a motion for new trial arise during the trial itself and may be separately appealed as simple trial error when challenging the "final judgment of conviction."[12]  In fact, most specific appellate claims of trial error sound in more than one of the general statutory bases for appeal identified in § 13-4033.[13]  We can assume that the legislature was aware of this overlap when drafting § 13-4033.  No practical logic explains why the legislature would compel a criminal defendant to separately and redundantly specify all conceivable pathways to invoke our jurisdiction over the claims they plan to raise.  This is especially so when,

---

[12] Because of this, the majority maintains that any loss of our jurisdiction over denials of motions for new trial would practically impose no hardship on the criminal defendants seeking to overturn their convictions.  My colleagues overlook that several of the grounds specified for moving for a new trial require further factual development and a trial court ruling unique to the Rule 24 process.  *See* Ariz. R. Crim. P. 24.1 (c)(2)-(3) (authorizing defendants to challenge misconduct by state or juror misconduct), (d) (authorizing presentation of affidavits or testimony from witnesses relating to conduct of juror, court official, or third person).  Furthermore, many claims of trial error arise from unexpected events during trial that require a trial court to rule without comprehensive briefing from the parties.  A motion for new trial provides an opportunity for the parties to do so and for the trial court to reconsider its rulings in light of that briefing.  This, in turn, allows appellate courts to consider those more comprehensive arguments.

[13] Almost all interlocutory claims simultaneously affect both the "judgment of conviction" and "sentence."  Our court has undoubted jurisdiction over such legally indistinguishable claims when a defendant files a traditional notice of appeal from "a judgment of conviction and imposition of sentence," the filing deadline for which is provided together at Rule 31.2(a)(2)(A).

as here, those they have noticed would logically encompass those they have not.

¶44        Although several sections of our procedural rules facilitate a potential appeal from an order denying a motion for new trial, *see, e.g.*, Ariz. R. Crim. P. 31.2(a)(2)(B), 31.3(b)(1), none of those provisions suggest that a defendant must separately appeal such an order to trigger our jurisdiction. The majority maintains that Rule 31.2(a)(2)(B) implies such a requirement.[14] But that provision simply provides the pertinent deadline in the event a defendant *chooses* to separately appeal a motion for new trial. No language in that subsection prohibits a defendant from electing instead to invoke our jurisdiction over the same topic by simply appealing the judgment.

¶45        Other provisions in our rules suggest that denials of motions for new trial would usually not be separately appealed. Rule 24 itemizes three separate avenues for litigating "post-verdict" motions challenging a conviction. Ariz. R. Crim. P. 24.1 (articulating grounds and procedural requirements for filing "Motion for New Trial"); Ariz. R. Crim. P. 24.2 (articulating grounds and pertinent deadlines for "Motion to Vacate Judgment"); Ariz. R. Crim. P. 24.3 (articulating grounds and procedural requirements for seeking "Modification of Sentence"). Two of the three rules provide specific deadlines for appealing a ruling on such motions and for coordinating appeals with any pre-existing appeals from the judgment and/or sentence. *See* Ariz. R. Crim. P. 24.2(b)-(d); Ariz. R. Crim. P. 24.3(a), (c). Tellingly, Rule 24.1 contains no parallel provisions. That rule, procedurally authorizing motions for new trial, neither addresses deadlines for a separate appeal nor provides direction for coordinating such appeals with an appeal from the judgment or sentence.

¶46        This framing suggests a recognition that Rule 24.1 orders are almost always non-final, issued pre-judgment, and therefore will more commonly and logically be appealed as part of an appeal of the final judgment. By contrast, the post-judgment motions described in rules 24.2 and 24.3 *must* necessarily have separate appeal deadlines from the prior, usually expired, deadlines to appeal the underlying judgment or sentence.

¶47        Finally, our supreme court has directed us to construe our rules of criminal procedure so as "to secure simplicity in procedure" and

---

        [14]That subsection reads: "A notice of appeal from a judgment or order other than (A) must be filed no later than 20 days after entry of the judgment."

"the elimination of unnecessary delay and expense." Ariz. R. Crim. P. 1.2. This should further discourage us from reading those rules to erect notice requirements for triggering our appellate jurisdiction that are so at odds with efficient and customary appellate practice [15] —and that are not compelled by the express language of any of those rules or our jurisdictional statutes. Notably, Arizona's jurisprudence repeatedly emphasizes a preference for reaching appeals on their merits and for avoiding piecemeal appeals. *See, e.g.*, *Rodriguez v. Williams*, 104 Ariz. 280, 283 (1969) ("We have frequently held that we prefer to determine cases on their merits rather than on points of procedure."); *State v. Youngblood*, 173 Ariz. 502, 504 (1993) ("Piecemeal litigation is an evil to be avoided."). The majority's interpretation of our rules contradicts both of these bedrock principles.

**¶48** The majority's conclusion also disregards our own court's most comprehensive and long-settled jurisprudence on the necessary contents of a notice of appeal in criminal matters. In *State v. Smith*, we determined that our subject matter jurisdiction is effectively triggered by the invocation of one properly noticed ground absent any prejudice to the appellee. 171 Ariz. 501, 504 (App. 1992). There, we specifically determined that a notice of appeal from a defendant's "sentence" was sufficient to trigger the court's jurisdiction over potential issues related to the conviction. *Id.* We so concluded although § 13-4033(A)(1) then, as now, separately itemized a "final judgment of conviction" as a basis for appeal.

---

[15]Until this court issued its opinion in *State v. Wilson* in 2022, we routinely reached appellate challenges to denials of pre-judgment motions for new trial when defendants had not separately appealed those denials. *E.g.*, *State v. Olague*, 240 Ariz. 475, ¶¶ 1, 4, 16-22 (App. 2016); *State v. West*, 238 Ariz. 482, ¶¶ 1, 11-12, 30-31, 46-50 (App. 2015); *State v. Welch*, 236 Ariz. 308, ¶¶ 1, 12, 17-18, 23 (App. 2014); *State v. Davis*, 226 Ariz. 97, ¶¶ 1, 4-8 (App. 2010); *State v. Armenta*, No. 2 CA-CR 2021-0024, ¶¶ 1, 28 (Ariz. App. Aug. 31, 2022) (mem. decision); *State v. Ortiz*, No. 2 CA-CR 2020-0045, ¶¶ 14, 33-38 (Ariz. App. Mar. 31, 2021) (mem. decision); *State v. Ruelas*, No. 2 CA-CR 2016-0344, ¶¶ 1, 17-19 (Ariz. App. May 30, 2018) (mem. decision); *State v. Congress*, No. 2 CA-CR 2015-0097, ¶¶ 1, 25-31 (Ariz. App. Feb. 4, 2016) (mem. decision); *State v. Lewis*, No. 2 CA-CR 2012-0181, ¶¶ 1, 16-19 (Ariz. App. Jan. 28, 2013) (mem. decision); *State v. Hursey*, No. 2 CA-CR 2008-0265, ¶¶ 1, 16, 18 (Ariz. App. Apr. 30, 2009) (mem. decision); *State v. Elam*, No. 2 CA-CR 2007-0388, ¶¶ 1, 4-7 (Ariz. App. Dec. 19, 2008) (mem. decision); *State v. Staples*, No. 2 CA-CR 2006-0204, ¶¶ 1, 6, 10, 13-17 (Ariz. App. Sept. 27, 2007) (mem. decision).

*Smith*, 171 Ariz. at 503-04.  Citing both federal and state cases, we held that "the notice of appeal serves as a notice pleading rather than a jurisdictional limitation on the grounds the court may consider on appeal."  *Id.* at 504.  Our supreme court has recently endorsed this non-technical approach in assessing whether appellate jurisdiction is properly triggered by a notice of appeal.  *Shea v. Maricopa County*, 255 Ariz. 116, ¶ 20 (2023) (effective notice of appeal encompasses any document filed that states intention to appeal trial court's judgment or order, and expressing supreme court's preference for looking to substance rather than form when interpreting procedural devices).  That approach should dispose of the issue before us.

**¶49**        The majority counters that, after *Smith*, our legislature repealed a companion statute, former A.R.S. § 13-4035, which had required our court to conduct mandatory review of "all rulings affecting the judgment" expressly including "the action of the court below in denying a new trial."  But, § 13-4035 related to the scope of our court's compulsory review of potential unbriefed claims, not our jurisdiction.  *See Smith*, 171 Ariz. at 504-05 (expressly distinguishing between jurisdictional question under § 13-4033 and "scope of review" question related to mandatory fundamental error review under § 13-4035).  Thus, to the extent the majority maintains that the repeal of § 13-4035 expressed a legislative intent to deprive this court of jurisdiction over appellate grounds not separately noticed, it overlooks the markedly different topics addressed by the two statutes in question.

**¶50**        Notably, the legislature has not substantively altered any pertinent provision in § 13-4033 since we issued our opinion in *Smith*.  Given the distinction the *Smith* court identified between § 13-4033 and § 13-4035, expressly clarifying that the former addresses our jurisdiction while the latter addressed only the scope of mandatory review, we can assume that when the legislature chose to repeal only the latter statute, it was not offended by *Smith*'s recent application of the former.

**¶51**        The majority chooses instead to follow cursory reasoning from another panel of this court.  In *State v. Wilson*, that panel tersely determined that an appeal from a "judgment and sentence" did not endow this court with jurisdiction over a challenge to a denial of a motion for new trial.  253 Ariz. 191, n.3 (App. 2022).  Its conclusory reasoning consisted of one sentence, relegated to a footnote, irrelevant to the outcome of the case, supported only by parenthetical references to the pertinent statute and

procedural rule.[16]  The sum total of its implicit reasoning:  a defendant must appeal separately because § 13-4033 separately itemizes denials of motions for new trial as a ground for appeal, and Rule 31.2 requires a notice of appeal to identify the order, judgment, or sentence that is being appealed.  That footnote demonstrated no awareness of the contrary conclusion of our prior comprehensive opinion in *Smith*.  Nor did it address the crux of our prior reasoning therein.  Having failed to do either, *Wilson* can claim no primacy over *Smith* as authority based on its recency.  In essence, then, we address conflicting holdings—one cursory and the other comprehensive—authored by two different panels of our court.  *See Smith*, 171 Ariz. at 503-05 (comprehensively addressing issue with reference to both federal and state jurisprudence).

**¶52**          In sum, we should be guided by the pertinent statute, the applicable rules, and the thrust of our jurisprudential reasoning.  None of them require that defendants separately appeal an order denying a pre-judgment motion for new trial.  To the contrary, settled understandings of efficient appellate procedure—that appeals should await a final judgment, that piecemeal appeals should be avoided, and that notices of appeal need identify only the final judgments challenged not, specific underlying claims—all suggest that defendants should retain the customary option of merging a challenge to a pre-judgment denial of a motion for new trial into an appeal of the judgment.  I join the majority opinion as to all other issues addressed.

---

[16]The court was not required to reach the question because it had remanded for a new trial on other grounds.  This may explain its cursory treatment of the issue.